USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/17/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

V.P.,

Plaintiff,

-v-

EDUCATION PLUS CORPORATION d/b/a FAMILY FOUNDATION SCHOOL, et al.,

Defendants.

26-cv-5250 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Education Plus Corporation d/b/a Family Foundation School ("FFS"), Emmanuel Argiros a/k/a Michael Argiros ("Michael Argiros"), Cindy Argiros a/k/a Cindy Ray a/k/a Cindy Ray Argiros, Betty Argiros, Kasos Co Family LP, Kasos Enterprises LLC, and The Hancock Herald (collectively, "Moving Defendants") move, pursuant to 28 U.S.C. § 1404(a), for an order transferring this case to the United States District Court for the Northern District of New York. Dkt. No. 91.[1]

For the reasons that follow, the motion is granted.

**BACKGROUND**

This case grows out of the March 2025 conviction, following a jury trial, of Defendant Paul Geer on charges of coercing and enticing minor students to travel across state lines to engage in unlawful sexual activity and two counts of transporting minor students across state

[1] The following additional Defendants, though not movants, consent to transfer: Diane Geer; Linda Drake; Villa Veritas Foundation Inc.; Suzanne Cusack; Village of Hancock, New York; Hancock Village Police Department; Delaware County Sheriff's Office; and Delaware County Board of Supervisors. Dkt. No. 91 at 2.

lines with the intent to engage in criminal sexual activity with them. Dkt. No. 88 ¶¶ 4, 14, 65. Paul Geer was a music teacher and chaperone at FFS. *Id.* ¶ 14. FFS was a residential boarding school located in Hancock, Delaware County, New York. *Id.* ¶¶ 1, 10. FFS was owned and operated by the Argiros family. *Id.* ¶ 10. Michael Argiros owned, operated, and directed FFS and was president of its board from 1993 until the school's closure in 2014. *Id.* ¶ 11. Cindy Argiros and Betty Argiros had operational responsibilities for FFS. *Id.* ¶¶ 12–13. Diane Geer and Lynda Drake were employees of FFS. *Id.* ¶¶ 15–16.

Plaintiff alleges that FFS, its employees and associates, its service providers, "complicit local institutions, professional enablers, and referring agencies" operated as an enterprise for the common purpose of enriching the Argiros family through tuition fraud, forced child labor, and sexual exploitation of minors. *Id.* ¶¶ 36, 38, 94. FFS falsely represented itself as qualified to provide therapeutic, psychiatric, psychological, and substance abuse treatment services to enrolled students. *Id.* ¶¶ 10, 37. In reality, it was "founded and operated by former alcoholics and self-identified sex addicts with no professional licensing, clinical training, or educational credentials relevant to the treatment of adolescent substance abuse, mental health disorders, or learning disabilities." *Id.* ¶ 37. The enterprise "extract[ed] substantial tuition payments from the families of enrolled students, public school districts, and state agencies through misrepresentations about the nature and quality of the services provided." *Id.* ¶ 38. FFS also employed a punishment system known as "work sanctions" that extracted "unpaid physical labor from minor students for the direct financial benefit of the Argiros family" while ensuring compliance with the demands of the enterprise "through a pervasive climate of fear and physical coercion." *Id.* ¶ 51. Minor students were forced without compensation and through the use of physical and psychological coercion to perform work on the Argiros family estate, including

digging excavation trenches, shoveling snow, cleaning waste from the pig pens and farm animal enclosures, assisting in the construction of the family chapel, moving rocks and bricks across the family grounds, preparing meals, and cleaning the Argiros family home. *Id.* ¶¶ 52–53. Finally, the enterprise groomed and sexually exploited enrolled students while "maintaining through institutional coercion and external suppression the silence necessary to conceal the enterprise's true nature." *Id.* ¶ 38.

V.P. is an adult individual who, as a minor, attended FFS from approximately 2000 through 2003. *Id.* ¶¶ 9, 56. When not at school, Plaintiff lived between his mother's residence in Demarest, New Jersey and his father's residence on Roosevelt Island, New York. *Id.* Plaintiff was referred to FFS by Defendant The Northern Valley Regional High School District at Demarest through representations that FFS was equipped to provide him psychiatric, psychological, behavioral, and educational support. *Id.* ¶¶ 25, 44. These representations were false in every respect. *Id.* ¶ 45. Plaintiff alleges that he was sexually abused by Paul Geer both at the FFS campus and on a school trip to Toronto, Canada. *Id.* ¶¶ 9, 58–62. On multiple occasions at the FFS campus, Paul Geer isolated Plaintiff from other students and staff and sexually assaulted him. *Id.* ¶ 60. Plaintiff also alleges that he reported the abuse to Michael Argiros, who took no disciplinary action against Paul Geer and did not involve law enforcement but instead placed Plaintiff on work sanction in retaliation for his reports. *Id.* ¶¶ 9, 11, 63. While at FFS, Plaintiff was personally subjected to multiple instances of work sanctions, including being compelled to care for and maintain the Argiros family's livestock and farm animals and to prepare meals for the Argiros family, staff, and student body. *Id.* ¶ 55.

Plaintiff did not discover the true nature of the alleged racketeering enterprise until the Federal Bureau of Investigation contacted him in 2024 and the subsequent public proceedings of

Paul Geer's federal criminal trial, at which he testified. *Id.* ¶¶ 9, 88. Paul Geer was convicted in March 2025. *Id.* ¶ 4. Plaintiff filed this lawsuit on June 5, 2026 in the United States District Court for the Eastern District of New York. Dkt. No. 1.

Plaintiff names 28 Defendants. Defendants fall into several categories: (1) FFS, the school located at 431 Chapel Hill Road, in Hancock, New York, Dkt. No. 88 ¶ 10; (2) members of the Argiros family, including Michael Argiros, who was president of the board of FFS from 1993 through the school's closure in 2014, Cindy Argiros, and Betty Argiros, *id.* ¶¶ 11–13; (3) Paul Geer and his wife Diane Geer, both of whom were teachers at FFS, *id.* ¶¶ 14–15; (4) other individual employees, agents, consultants, or contractors for FFS, including school nurse Lynda Drake, consulting psychologist Jeff Brain, M.A., social worker Susan Runge, and treating psychiatrist Ivan Fras, M.D., *id.* ¶¶ 16, 22–24; (5) governmental entities including the Village of Hancock, New York, the Town of Hancock, New York, the Village of Hancock Police Department, the Delaware County Sherriff's Office, and the Delaware County Board of Supervisors, which benefitted financially from the activities of FFS and the Argiros family yet failed to report or respond to the wrongdoing, *id.* ¶¶ 17–20; (6) service providers to FFS or its students, such as the Garnet Health Medical Center Catskills-Calicoon, which provided medical services to FFS students and received direct financial compensation from FFS, Villa Veritas Foundation Inc. and its director Suzanne Cusack, who was a recommended post-enrollment treatment provider for FFS students, Lackawanna College, which placed professors and instructors on the FFS campus in Hancock, New York, the National Association of Therapeutic Schools and Programs, which provided accreditation to FFS, and K9-5 Inc., whose corporate address is the FFS campus grounds in Hancock, New York and which provided the dogs that FFS used to impose discipline at FFS, *id.* ¶¶ 21, 26–29, 34; (7) entities associated with the

Argiros family including Kasos Co Family LP, which held title to the FFS real property and operated as an alter ego of the members of the Argiros family, Kasos Enterprises LLC, which is an alter ego of the Argiros family and holds significant real property in the Village of Hancock, New York, and Chapel Hill Land Holdings LLC, which acquired the FFS real property from Kasos Co Family LP, *id.* ¶¶ 31–33; (8) NBT Bank, N.A., which was the sole bank operating in the Village of Hancock throughout the relevant period and which held accounts for FFS and members of the Argiros family, and the bank's publicly traded parent company, NBT Bancorp Inc., *id.* ¶ 30; and (9) The Hancock Herald, which is the only local newspaper serving the Village of Hancock, *id.* ¶ 35. Plaintiff has also named the Northern Valley Regional High School District at Demarest, which facilitated Plaintiff's placement at FFS. *Id.* ¶ 25. Most of the Defendants are located in Northern New York, in or close to Hancock.

Plaintiff asserts 21 claims for relief. Plaintiff's first count alleges a substantive violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against all Defendants, and his second count alleges a claim for RICO conspiracy in violation of 18 U.S.C. § 1962(d), against all Defendants. *Id.* ¶¶ 93–103. Plaintiff alleges that "Defendants constituted an enterprise within the meaning of 18 U.S.C. § 1961(4), as an association-in-fact that operated through the FFS institution as its primary vehicle." *Id.* ¶ 94. Plaintiff also alleges that each Defendant participated in the conduct of the enterprise's affairs through a pattern of racketeering. *Id.* ¶ 96. The remainder of Plaintiff's counts fall under four general categories and are alleged against various combinations of Defendants. First, Plaintiff seeks civil recovery for violations of the federal sex trafficking and forced labor laws, including sex trafficking of a minor: perpetrator liability under 18 U.S.C. §§ 1591(a)(1) and 1595 (*id.* ¶¶ 104–08); civil recovery for knowing beneficiaries of sex trafficking under 18 U.S.C. § 1595 (*id.* ¶¶ 109–11);

forced labor: perpetrator liability under 18 U.S.C. §§ 1589 and 1595 (*id.* ¶¶ 112–14); civil recovery for knowing beneficiaries of forced labor under 18 U.S.C. § 1595 (*id.* ¶¶ 115–17); civil recovery for obstruction of the enforcement of the sex trafficking laws under 18 U.S.C. §§ 1591(d) and 1595 (*id.* ¶¶ 118–22); conspiracy to benefit from sex trafficking and forced labor under 18 U.S.C. §§ 1595 and 1594(c) (*id.* ¶¶ 129–33); civil recovery for knowing beneficiaries of sex trafficking under 18 U.S.C. § 1595 (*id.* ¶¶ 174–81); civil recovery for knowing beneficiaries of forced labor under 18 U.S.C. § 1595 (*id.* ¶¶ 182–87); trafficking with respect to forced labor under 18 U.S.C. §§ 1590 and 1595 (*id.* ¶¶ 188–90); and civil remedy for personal injuries arising from the coercion and transportation of a minor for criminal sexual activity under 18 U.S.C. § 2255 (*id.* ¶¶ 191–96). Second, Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 for deliberate indifference to known abuse in violation of the Fourteenth Amendment. *Id.* ¶¶ 149–55. Third, Plaintiff asserts violations of New York State and New York City laws, seeking civil recovery for child victims of human trafficking under New York Social Services Law § 483-bb(c) (*id.* ¶¶ 123–28); and relief under the New York City Victims of Gender Motivated Violence Protection Law, codified at N.Y.C. Administrative Code §§ 10-1101 et seq. (*id.* ¶¶ 166–73). Finally, Plaintiff alleges a number of torts, including negligent failure to provide promised therapeutic services, negligent misrepresentation, and deceptive acts and practices (*id.* ¶¶ 134–44); negligence *per se* for failure to report child abuse (*id.* ¶¶ 156–65); fraud (*id.* ¶¶ 197–202); assault, battery, and intentional infliction of emotional distress (*id.* ¶¶ 203–07); and aiding and abetting fraud (*id.* ¶¶ 208–13). Plaintiff also pleads negligence and negligent supervision and retention in the alternative (*id.* ¶¶ 145–48).

**PROCEDURAL HISTORY**

This case was filed on June 5, 2026 in the United States District Court for the Eastern District of New York. Dkt. No. 1. On June 12, 2026, Judge Orelia E. Merchant, to whom the

case was then assigned, issued an order to show cause why the case should not be transferred to this Court on the basis that Roosevelt Island, where Plaintiff claimed he lived with his father, was in the Southern District of New York. *See* June 12, 2026 Minute Entry. On June 18, 2026, before any parties had entered an appearance as Defendants, Judge Merchant issued an order, under 28 U.S.C. § 1406(a), transferring the case to this District on the basis that Roosevelt Island is in New York County, and thus in the Southern District of New York, and that Plaintiff consented to transfer. Dkt. No. 32.

An amended complaint was filed on June 29, 2026, Dkt. No. 38, and Plaintiff filed the operative Second Amended Complaint ("SAC") on August 13, 2026, Dkt. No. 88.

The Court held an initial pretrial conference on August 6, 2026. Dkt. No. 77. Following that conference, the Court issued a written order memorializing the orders it had issued orally earlier in the day, permitting Plaintiff to proceed by pseudonym and staying discovery pending a decision on the then-anticipated motion to transfer venue. *Id.*

This motion was filed on August 21, 2026, supported by a memorandum of law, the affirmation of Jeanette N. Warren, and the declarations of Emmanuel Mike Argiros and Cindy Ray. Dkt. Nos. 91–95.[2] Plaintiff filed a memorandum of law in opposition to the motion and the affirmation of Luis Umana on September 1, 2026. Dkt. Nos. 105–06. On September 8, 2026, the Moving Defendants filed a reply memorandum of law and a reply affirmation of Jeanette N. Warren in further support of the motion to transfer venue. Dkt. Nos. 109–10.

**DISCUSSION**

The Court engages in a two-step inquiry to determine whether transfer is appropriate under Section 1404(a). First, it determines "whether the action could have been brought in the

[2] The Moving Defendants filed an Amended Memorandum of Law on August 21, 2026. Dkt. No. 97. The Court refers to the Amended Memorandum of Law throughout this opinion.

proposed transferee court." *See Inventel Prods. LLC v. Penn LLC*, 2017 WL 818471, at *2 (S.D.N.Y. Feb. 28, 2017) (Nathan, J.). Second, the Court "'balance[s] the private and public interests,' to determine whether transfer is warranted '[f]or the convenience of parties and witnesses, [and] in the interest of justice.'" *Id.* (alteration in original) (first quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); and then quoting 28 U.S.C. § 1404(a)). "Among the factors to be considered in determining whether to grant a motion to transfer venue 'are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)). "The Court also considers '[(8)] the forum's familiarity with the governing law . . . and (9) trial efficiency and the interests of justice based on the totality of the circumstances.'" *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *5 (S.D.N.Y. Nov. 17, 2022) (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017).

"[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine*, 599 F.3d at 114 (quoting *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). Accordingly, "district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining

whether to exercise discretion to grant a transfer motion," *id.* at 114 (collecting cases), and operate with considerable discretion, *see Forjone v. California*, 425 F. Appx 73, 74 (2d Cir. 2011) (summary order) ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." (quoting *Filmline*, 865 F.2d at 520)).

## I. This Action Could Have Been Brought in This District

The first question a court answers in addressing whether to transfer venue under § 1404(a) is whether the action could have been brought in the proposed transferee venue. If the case could not have been originally brought in the transferee district, then transfer under § 1404(a) is not appropriate. A case could have been brought in the transferee venue when subject matter jurisdiction, personal jurisdiction, and venue are all proper at the time the action was filed. *See AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd.*, 775 F. Supp. 2d 640, 646 (S.D.N.Y. 2011). "There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *Exist, Inc. v. Vt. Country Store, Inc.*, 2019 WL 5310476, at *3 (D. Vt. Oct. 21, 2019) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)); *accord Manchin v. PACS Grp., Inc.*, 2025 WL 1276569, at *6 (S.D.N.Y. May 1, 2025); *Finally Sunday LLC v. Friday Beers LLC*, 2025 WL 405796, at *5 (W.D.N.Y. Feb. 5, 2025).

Plaintiff does not dispute that this action could have been brought in the Northern District of New York. *See* Dkt. No. 106 at 5–7 (arguing that the Southern District of New York has venue but not disputing that venue would have been proper in the Northern District of New York). Venue is properly laid for Plaintiff's RICO claim in the Northern District of New York under 18 U.S.C. § 1965(a) because FFS transacted its business from the Northern District of

New York. With respect to the remainder of Plaintiff's claims, the face of the SAC makes clear that "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District. 28 U.S.C. § 1391(b)(2).

This Court and that court have subject matter jurisdiction over Plaintiff's federal claims because they raise a federal question pursuant to 28 U.S.C. § 1331 and over Plaintiff's state law claims because they arise out of the same nucleus of operative fact and thus support supplemental jurisdiction under 28 U.S.C. § 1367. The Northern District of New York has personal jurisdiction over the Moving Defendants and over each of the remaining Defendants, because a number of the corporate and municipal Defendants are incorporated, organized, or maintain a principal place of business within the Northern District, the individual Defendants reside and/or personally engaged in some or all of the conduct alleged within the Northern District, and the remaining Defendants are alleged to have engaged in, participated in, or purposefully directed their relevant conduct at the FFS campus in Hancock, New York, within the Northern District.

Plaintiff argues that the Southern District of New York also has venue over this action because the enterprise transported Plaintiff to FFS from his father's home in Roosevelt Island and the tuition payments FFS received were derived from wages Plaintiff's father earned in Manhattan. Dkt. No. 106 at 5–7. The substantiality requirement focuses "on the relevant activities of the defendant, not the plaintiff," *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005)), for "[t]he venue requirement is intended 'to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial,'" *P.C. v. Driscoll*, 2025 WL 104522, at *5 (S.D.N.Y. Jan. 15, 2025) (quoting *Leroy v. Great W.*

*United Corp.*, 443 U.S. 173, 183–84 (1979)). That said, "[m]ultiple judicial districts may be appropriate venues under this provision as long as a substantial part of the underlying events took place in each." *Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830, at *5 (S.D.N.Y. Apr. 4, 2023). Assuming *arguendo* that this District would have been a permissible venue for each of Plaintiff's claims,[3] that does not mean that the case could not have been brought in the Northern District of New York.

## II. The Balance of Factors Favors Transfer

The Court next turns to the balance of factors. That balance overwhelmingly supports transfer.

### A. Plaintiff's Choice of Forum

Ordinarily and under the law of this Circuit, "a plaintiff's choice of forum is presumptively entitled to substantial deference" for "our legal system has traditionally deferred to the plaintiff's choice of forum." *Gross*, 386 F.3d at 230 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70–71 (2d Cir. 2001) (en banc)). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (noting that a plaintiff's choice of forum is "entitled to substantial consideration" (citation omitted)); *NYC Vision Cap., Inc. v. C21FC, LLC*, 2022 WL 2527611, at *5 (S.D.N.Y. July 7, 2022) (same); *In re Bystolic Antitrust Litig.*, 2021 WL 148747, at *2 (S.D.N.Y. Jan. 15, 2021) (same).

Plaintiff did not choose this District, however. He chose to file in the United States District Court for the Eastern District of New York. His case is in this District only because that

---

[3] Moving Defendants do not challenge venue under Federal Rule of Civil Procedure 12(b)(3).

court recognized that it did not have proper venue and made the decision to transfer the case to this District rather than dismissing it. Plaintiff acknowledges that he merely "consented to transfer to this District rather than urging any other forum," Dkt. No. 106 at 7, and that "[t]his District is Plaintiff's adopted and affirmed choice of forum." *Id.* Plaintiff argues nonetheless that the first factor weighs in his favor because of the forum's connection to this case—the fact that one of his two childhood homes was in this District, he was transported to FFS from this District, and the tuition payments emanated from income earned in this District. *Id.* But those considerations speak to other Section 1404(a) factors. The first factor thus provides no independent support for the maintenance of venue in this District.[4]

**B. The Convenience of the Witnesses and the Parties and the Relative Means of the Parties**

The next set of factors relates to the convenience of the parties and witnesses and the relative means of the parties. The three factors are appropriately considered together because Plaintiff has named a large number of Defendants (including individuals), many of whom also would be witnesses.

After the plaintiff's choice of forum, the convenience of the witnesses is considered to be "the most important . . . in considering a § 1404(a) motion to transfer." *Larew v. Larew*, 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)). "In considering the convenience of the witnesses, the Court should 'not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum [but] must qualitatively

[4] Plaintiff also argues that an order by this Court transferring the case to the Northern District of New York would constitute "an open invitation for serial transfer motions." Dkt. No. 106 at 7. There is no such risk in this case. The Eastern District of New York transferred this case *sua sponte* before any Defendant appeared. There are no serial motions.

evaluate the materiality of the testimony that the witnesses may provide.'" *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 436 (E.D.N.Y. 2012) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)); *see also Johnson v. Costco Wholesale Corp.*, 2021 WL 3128236, at *2 (S.D.N.Y. July 23, 2021) (same). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). "But the convenience of party witnesses is 'still relevant,' and thus not wholly insignificant." *Pilevesky v. Suntrust Bank*, 2010 WL 4879006, at *3 (E.D.N.Y. Nov. 22, 2010) (quoting *Fellner v. Cameron*, 2010 WL 681287, at *3 (W.D.N.Y. Feb. 24, 2010)).

Ordinarily, "[b]ecause of the importance of this factor, the party seeking transfer 'must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185–86 (E.D.N.Y. 2003) (quoting *Royal & Sunalliance v. Brit. Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). Nonetheless, courts have been willing to relieve the moving party of the need to provide a list of witnesses and the probable subject matter of their testimony where "it is obvious that a substantial portion of the witnesses are located in the transferee district." *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *3 (S.D.N.Y. Nov. 7, 2022).

The convenience of the witnesses and parties favors transfer. Plaintiff has named 28 Defendants. None is a resident of this District. The six Moving Defendants are all located in the

Northern District of New York. *See* Dkt. No. 92 at 5–7; *Royal & Sunalliance*, 167 F. Supp. 2d at 577 ("When considering the convenience of the parties, '[t]he logical starting point is a consideration of the residence of the parties.'" (quoting *Frasca v. Yaw*, 787 F. Supp. 327, 331 (E.D.N.Y. 1992))). Twelve other Defendants also reside or are located in the Northern District of New York, including the Village of Hancock, the Village of Hancock Police Department, the Town of Hancock, the Delaware County Sheriff's Office, the Delaware County Board of Supervisors, NBT Bank, N.A. and NBT Bancorp Inc., Garnet Health, Chapel Hill Land Holdings, K9-5 Inc., Diane Geer, and Susan Runge. Dkt. No. 92 at 7. The Moving Defendants have described the testimony that each of these witnesses will provide. *Id.* at 6–9. The testimony that each is expected to provide would be material. It includes testimony regarding the operations of FFS during the relevant time and its policies and procedures regarding marketing and advertising and the recruitment, hiring, disciplining, and terminating of employees, *id.* at 5–7, FFS's involvement in the community of Hancock and the benefit the local community may have received from FFS as well as the involvement of the Argiros family in the community, *id.* at 7–8, the policies and procedures of the law enforcement Defendants in receiving and responding to complaints, Garnet Health's relationship with FFS including the services (if any) it provided to FFS students, *id.* at 8, the financial services the banks provided to FFS, *id.*, Chapel Hill's acquisition of real property formerly owned or used by FFS, *id.* at 8–9, the educational enforcement and student discipline at FFS, *id.* at 9, and FFS's policies and procedures regarding allegations of abuse made by students, *id.*

The overwhelming majority of parties supports transfer. Two Defendants do not consent but have not filed papers in opposition to the motion (NBT Bank, N.A. and NBT Bancorp Inc.). Dkt. No. 91 at 3. Ten Defendants have not provided a response.[5]

Plaintiff does not reside in this District. Dkt. No. 105 ¶ 8. Besides himself, he points to his father (who does reside in this District) and the Northern Valley Regional High School District at Demarest as relevant witnesses. *Id.* ¶¶ 8–9. But neither Plaintiff's father nor the Northern Valley Regional High School District at Demarest is a percipient witness to the activities at FFS and neither can testify from personal observation to the experience of Plaintiff and the other students at the school.

Plaintiff argues that he is an "individual survivor litigating against a roster of institutional defendants, municipalities, and a bank holding company," Dkt. No. 106 at 15, and that his lawyer is located in Brooklyn, New York, *id.* But Plaintiff's lawyer has brought numerous lawsuits in the Northern District of New York against FFS, Dkt. No. 93 ¶ 7, and, as Plaintiff notes, there are individuals on both sides in this case. The municipal Defendants whom he has named are supported by local taxpayers. The relative means may tip slightly in favor of transfer.[6]

**C. The Locus of Operative Facts**

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *4 (S.D.N.Y. July

[5] The non-responding parties are: Chapel Hill Land Holdings LLC; K9-5 Inc.; Paul Geer; Lackawanna College; National Association of Therapeutic Schools and Programs; Garnet Health Medical Center Catskills-Calicoon; Northern Valley Regional High School District at Demarest; Jeff Brain, M.A.; Ivan Fras, M.D.; and Susan Runge, L.C.S.W. Dkt. No. 91 at 3.

[6] The availability of process does not favor either side. Moving Defendants have not identified any person who is not a party who is outside of this Court's jurisdiction and who would be unwilling to travel to testify.

10, 2013) (quoting *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)). "The determination of the locus of operative facts for purposes of choice of venue is not a mechanical exercise divorced from the substance of a dispute." *Wistron Neweb*, 2022 WL 17067984, at *8. "The factor is addressed to determining the venue which has the greatest interest in the resolution of the dispute and where evidence relevant to its resolution may be located." *Id.* There is a "local interest in having localized controversies decided at home." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013).

This factor overwhelmingly supports transfer. Plaintiff's case centers on the treatment that Plaintiff and others received at the FFS school, the sexual assaults he experienced at FFS, the forced labor he was required to perform for the Argiros family at the Argiros family estate, the benefits that the Hancock community received from the operation of FFS, and the reaction of law enforcement (or lack thereof) to complaints regarding the activities at FFS. All of that conduct occurred in the Northern District of New York. The Paul Geer trial was conducted in the Northern District of New York. This case belongs in the Northern District of New York. All that Plaintiff can point to is that he left for FFS from this District, that his father resided (and continues to reside) in this District, and that the tuition payments emanated from this District. Dkt. No. 88 ¶ 8. Assuming that those facts are relevant, they are peripheral and not central. The locus of operative facts is in Hancock and in the Northern District of New York.

**D. Trial Efficiency and Familiarity with Governing Law**

"Transfer is particularly appropriate where there is a pending lawsuit in the transferee district involving the same facts, transactions, or occurrences." *Nieves v. Am. Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988) (citing *Berg v. First Am. Bankshares, Inc.*, 576 F. Supp. 1239, 1243 (S.D.N.Y. 1983)). "Transfer of an action to a district where a related case is pending enables more efficient conduct of pretrial discovery, saves witnesses time and money in both

trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest." *Id.*

From June 29, 2026 to August 28, 2026, Plaintiff's counsel filed 12 substantially similar lawsuits against the Moving Defendants and many of the same co-Defendants that are now pending in the Northern District of New York, including *Van Arsdale v. Educ. Plus Corp., et al.*, No. 3:26-cv-01462 (AJB-ML) (N.D.N.Y. filed Jun. 29, 2026); *Jane Doe v. Educ. Plus Corp., et al.*, No. 3:26-cv-01397 (AJB-ML) (N.D.N.Y. filed Jul. 16, 2026); *C.R. v. Educ. Plus Corp., et al.*, No. 6:26-cv-01409 (AJB-ML) (N.D.N.Y. filed Jul. 21, 2026); *S.H. v. Educ. Plus Corp., et al.*, No. 3:26-cv-01412 (AJB-ML) (N.D.N.Y. filed Jul. 21, 2026); *Saez v. Educ. Plus Corp., et al.*, No. 3:26-cv-01450 (AJB-ML) (N.D.N.Y. filed Jul. 24, 2026); *Barley v. Educ. Plus Corp., et al.*, No. 3:26-cv-01493 (AJB-ML) (N.D.N.Y. filed Aug. 3, 2026); *Cowan-Johnson v. Educ. Plus Corp., et al.*, No. 6:26-cv-01560 (AJB-ML) (N.D.N.Y. filed Aug. 13, 2026); *Valentine v. Educ. Plus Corp., et al.*, No. 3:26-cv-01563 (AJB-ML) (N.D.N.Y. filed Aug. 14, 2026); *Boza v. Educ. Plus Corp., et al.*, No. 3:26-cv-01609 (AJB-ML) (N.D.N.Y. filed Aug. 21, 2026); *Lewis v. Educ. Plus Corp., et al.*, No. 3:26-cv-01655 (AJB-ML) (N.D.N.Y. filed Aug. 28, 2026); *Bruin v. Educ. Plus Corp., et al.*, No. 3:26-cv-01654 (AJB-ML) (N.D.N.Y. filed Aug. 28, 2026); and *Bartolomeo v. Educ. Plus Corp., et al.*, No. 3:26-cv-01656 (AJB-ML) (N.D.N.Y. filed Aug. 28, 2026). Dkt. No. 109 ¶ 6.[7] Each of those cases has been assigned to Judge Anthony Brindisi and Magistrate Judge Miroslav Lovric. *Id.* ¶ 7. Judge Brindisi has deemed the cases to be related.

---

[7] The *Van Arsdale* case was originally filed in the Eastern District of New York. Dkt. No. 93 ¶ 12. On July 29, 2026, after Moving Defendants filed a letter requesting a premotion conference in anticipation of a motion to dismiss or to transfer venue, Judge Reyes issued a text-only order transferring venue to the Northern District of New York "[b]ecause the material acts alleged in the complaint occurred in Hancock, New York." *Id.* ¶¶ 14–15.

Dkt. No. 93 ¶ 10. A Rule 16 conference has been scheduled in all of the related matters before Magistrate Judge Lovric for November 4, 2026. Dkt. No. 109 ¶ 12. The transfer of this case to the Northern District of New York thus would satisfy the interests of justice, permitting all cases to be managed together, eliminating unnecessary expense, and avoiding the risk of inconsistent results. Contrary to Plaintiff's argument, this case is not significantly more advanced than the cases filed shortly after it in the Northern District of New York. While Plaintiff has filed a Second Amended Complaint, the Court has not entered a scheduling order and the parties have not commenced discovery.[8]

Plaintiff argues that this factor favors the Southern District of New York because Plaintiff's Count XIV arises under the New York City Administrative Code §§ 10-1103, 10-1104, which is interpreted by the Appellate Division, First Department, which sits in New York County, and "[t]he courts of this District adjudicate GMVA claims regularly" and have developed case law applying the provision. Dkt. No. 106 at 10. But this Court has no particular or unique expertise with the New York City Administrative Code and that case law is available for the Northern District of New York to review. Transfer is not tantamount to an order granting Defendants "partial summary judgment on Count XIV." Dkt. No. 106 at 12.

**E. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007), *aff'd sub nom*, *N.Y. Marine*, 599 F.3d at

[8] By order of August 6, 2026, the Court stayed discovery pending a decision on Defendants' then-anticipated motion to transfer venue under 28 U.S.C. § 1404. Dkt. No. 77. On August 25, 2026, the Court granted Plaintiff's request to lift the stay for the limited purpose of permitting service of two Rule 45 subpoenas on non-party insurers. Dkt. No. 100.

112–14 (finding that district court did not abuse its discretion in denying motion to transfer where "'special circumstances' exception to the first-filed rule" was inapplicable, thus yielding to district court's balancing of the convenience factors). Moving Defendants have identified "no special facts that would make this factor weigh in [their] favor." *Id.*

Because the balance of factors weighs overwhelmingly in Moving Defendants' favor, Moving Defendants have satisfied their burden of showing by clear and convincing evidence that transfer is warranted.

**CONCLUSION**

The motion to transfer venue under 28 U.S.C. § 1404(a) is GRANTED. The Clerk of Court shall transfer this case to the United States District Court for the Northern District of New York and shall close the motion at Dkt. No. 91. The motions at Dkt. Nos. 29 and 47 are DENIED as moot and the Clerk of Court is respectfully directed to close those motions.

SO ORDERED.

Dated: September 17, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge